People v Lithgow (2024 NY Slip Op 24330)

[*1]

People v Lithgow

2024 NY Slip Op 24330

Decided on December 19, 2024

Criminal Court Of The City Of New York, New York County

Weiner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 19, 2024
Criminal Court of the City of New York, New York County

The People of the State of New York

against
Francisco Montano Lithgow, Defendant.

Docket No. CR-010578-24NY

For the Defendant: Melissa Sopher, Esq.
New York County Defender Services
For the People: Alvin L. Bragg, Jr., District Attorney, New York County
(Millicent Kastenbaum, of counsel)

Jay L. Weiner, J.

The defendant seeks an order dismissing the accusatory instrument pursuant to Criminal Procedure Law § 30.30 (1) (b) for the People's failure to file a valid certificate of compliance (COC) and certificate of readiness (COR) within 90 days of the commencement of the action, and granting various other relief.
This case presents the court with an opportunity to articulate what it believes the legislature intended with respect to the phrase "items and information that relate to the subject matter of the case" (Criminal Procedure Law § 245.20 [1]), as that phrase relates to the disclosure of impeachment evidence (Criminal Procedure Law § 245.20 [1] [k] [iv]). It also presents the court with an opportunity to provide guidance to the People in satisfying their burden of showing "due diligence" as it relates to their disclosure of items and information in the actual possession of the New York City Police Department (which is deemed to be in the possession of the People) (see Criminal Procedure Law §§ 245.20 [2], 245.50 [1], 245.55 [1]). Both issues have been the subject of much inquiry and analysis by trial-level and appellate courts, but, at least as to the disclosure of impeachment evidence, no definitive, binding precedent.
[*2]PROCEDURAL HISTORY
On April 10, 2024, the defendant was arraigned on an accusatory instrument (which had been filed on April 9, 2024) charging him with one count of operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [3]) and one count of driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]). The case was adjourned to May 29, 2024, for trial.
On May 29, 2024, the People were not ready for trial. The case was adjourned to July 24, 2024, for trial.
On July 2, 2024, the 84th day after the commencement of the criminal action, the People filed and served an initial COC, COR, an automatic discovery form (ADF), and a discovery list.
On July 10, 2024, defense counsel emailed the prosecutor regarding claimed missing discovery, specifically underlying NYPD Internal Affairs Bureau (IAB) material related to allegations of misconduct for testifying law enforcement officers. On July 11, 2024, the prosecutor responded that there was a pending request with the NYPD for these materials and they would be disclosed as soon as they were received.
On July 22, 2024, following the disclosure of disciplinary-related documents for Police Officer Felber Carpio and Police Officer Zachary Willis, the People filed and served a supplemental COC and COR. The explanation for the belated disclosure of the materials for Officer Carpio was that "as the People noted on their Automatic Discovery Form, they still have pending requests with the NYPD for police officer disclosure materials. On July 18, 2024, the assigned Assistant District Attorney was informed that the [six Internal Affairs logs and one DADS report] for Officer Carpio were received from the NYPD. The People promptly disclosed these materials on July 22, 2024." With respect to Officer Willis, the People stated that the disclosure notice dated July 11, 2024, contained nothing substantively different from the previously provided disclosure notice dated June 3, 2024.
In court on July 24, 2024, the People stated that they were ready for trial. Defense counsel was out of the office and the attorney who appeared on her behalf stated that counsel would be conferring with the People about discovery issues. The case was adjourned to September 10, 2024, for trial.
On August 14, 2024, the defendant filed the instant motion.
On September 10, 2024, the court set a motion schedule and adjourned the case to November 27, 2024, for decision. All papers have been timely filed.
The defendant argues that the People's initial COC and COR, and their supplemental COC and COR, are invalid because numerous items of discovery were either belatedly disclosed or not provided at all. Specifically, he contends that the People failed to exercise due diligence to timely disclose all required law enforcement impeachment materials, which, he says, are still incomplete. The People respond that the items the defendant demands are not discoverable as they do not relate to the subject matter of this case.
GENERAL PRINCIPLES OF DISCOVERY
Material Related to the Subject Matter of the Case
Pursuant to CPL 245.20 (1), the People must disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." "[A]ll items [*3]and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20 [2]). The subdivision further directs the People to make a diligent, good faith effort to ascertain the existence of such information, and when it exists, make it available for discovery, even if the material is not within their possession, custody, or control, provided that the prosecutor shall not be required to obtain by subpoena duces tecum material which the defendant may thereby obtain.
Once the People have satisfied their automatic discovery obligations, they must, pursuant to CPL 245.50 [1], "serve upon the defendant and file with the court" a COC. The COC shall identify the items provided and shall state that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL 245.50 [1]).
Continuing Duty to Disclose
If, after filing a COC, the People provide additional discovery to the defense in connection with their continuing duty to disclose (see CPL 245.60), they must file a supplemental certificate detailing the additional discovery provided and the basis for the delayed disclosure "so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50 [1], 245.60). The defense is required to make any challenge to the sufficiency of a COC or supplemental COC "as soon as practicable" (CPL 245.50 [4] [b]).
Pursuant to CPL 30.30 (5), the People cannot be deemed ready for trial until a proper COC is filed with the court and served upon the defense. Additionally, pursuant to CPL 245.50 (3), "the prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper certificate pursuant to subdivision one of this section."
Due Diligence
In People v Bay, the Court of Appeals' first decision concerning CPL article 245 the Court considered whether the People exercised due diligence prior to filing their COC, despite their failure to turn over multiple significant items subject to automatic disclosure (41 NY3d 200 [2023]). The Court described the requirement of due diligence as a flexible standard, requiring that the People make "reasonable inquiries" and "reasonable efforts" to comply with the statute (id. at 211). The Court further articulated that the due diligence analysis is case-specific; a discovery court should consider several factors, including:
"efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery."
(id. at 212). The Court went on to say that while a belated filing will not necessarily invalidate a COC or bear on due diligence, a belated filing "cannot compensate for a failure to exercise diligence before the initial COC is filed" (id.). Finally, it is the People's burden to establish that they exercised due diligence and made reasonable inquiries prior to filing their original COC (id. at 213). Under the facts in Bay, the Court concluded that the People's failure to disclose routine [*4]and significant items without detailing any efforts to ascertain their existence did not constitute due diligence (id. at 215).
Records of Police Misconduct for Testifying Officers
Pursuant to CPL 245.20 (1) (k) (iv), the People must disclose:
[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness.
THE PRESENT CASE
In the People's disclosure on July 2, 2024, they notified the defense that two law enforcement witnesses were expected to testify, Officers Carpio and Willis.[FN1]
Additionally, the addendum to the People's ADF included the following statement related to this category of discovery:
"[t]he People have a request pending with the NYPD for responsive material. Where such information has been obtained, it is included above. However, some aspects of this search may be ongoing due to the significant volume of requests received by the NYPD. As any discoverable material becomes available, the People will produce it as soon as is practicable."
The People's initial discovery for Officer Carpio included a disclosure advisory, a disclosure index, a disclosure notice, a Civilian Complaint Review Board (CCRB) history, a civil lawsuit in which he was a defendant, and research reports. The disclosure index reflects multiple allegations of misconduct deemed substantiated and unsubstantiated, discipline monitoring, a guilty plea to allegations of misconduct with a recommendation of 20 forfeited vacation days, and a suspension. No underlying IAB logs for the allegations of misconduct were provided. The People's initial discovery for Officer Willis included a disclosure index, a disclosure notice, a CCRB history, two IAB logs and research reports.
The defendant argues that the People's initial disclosures were inadequate in that they failed to provide all underlying and related records from IAB for Officer Carpio's substantiated and unsubstantiated allegations of misconduct. He asserts that the belated disclosure of some of these documents undermines the People's claim that they exercised due diligence to obtain them since any materials in the possession of law enforcement are deemed to be in the prosecution's possession as well. The defense stresses that many of these allegations involve disputed summonses in which the officer is alleged to have made pretextual car stops. Notably, in this case, Officer Carpio claims that he stopped the defendant's vehicle because the defendant went through a stop sign, an allegation the defendant denies. Another substantiated allegation [*5]regarding Officer Carpio involves his failure to provide testimony in support of two summonses he issued although the officer had the required paperwork. Officer Carpio's misconduct resulted in dismissal of both summons cases. Officer Carpio also pled guilty to charges of failing to safeguard a department vehicle, resulting in the forfeiture of 20 vacation days. He was subjected to discipline monitoring based on his overall record and history with the department. The People assert that the records the defense claims were belatedly disclosed, and any still undisclosed, do not relate to the subject matter of the pending case and, therefore, are not subject to automatic discovery. They further claim to have met their statutory obligation by exercising due diligence and acting in good faith to provide these records.
The First Department and trial courts throughout New York City and State have interpreted this statute (CPL 245.20 [1] [k] [iv]) to require the disclosure of underlying records related to the substantiated and unsubstantiated [FN2]
complaints against testifying members of law enforcement (see Matter of Jayson C., 200 AD3d 447, 448-449 [1st Dept 2021]; People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022]); see also e.g. People v Abdullaev, 2024 NY Slip Op 51690[U], *3 [Crim Ct, Kings County 2024]; People v Gourdine, 83 Misc 3d 1264[A], 2024 NY Slip Op 51031[U], *6 [Sup Ct, Kings County 2024]; People v Bienaime, 83 Misc 3d 1265[A], 2024 NY Slip Op 51035[U], *4 [Crim Ct, Kings County 2024]; People v Caldiero, 83 Misc 3d 1218[A], 2024 NY Slip Op 50747[U], *4 [Crim Ct, Queens County 2024]; People v Cumbe, 82 Misc 3d 1242[A], 2024 NY Slip Op 50524[U], *6 [Crim Ct, Kings County 2024]; People v Mohammed, 82 Misc 3d 1209[A], 2024 Ny Slip Op 50263[U], *5 [Nassau Dist Ct, 1st Dist 2024]; People v Martinez, 75 Misc 3d 1212[A], 2022 NY Slip Op 50476[U], *4 [Crim Ct, NY County 2022]; People v Barralaga, 73 Misc 3d 510, 515-516 [Crim Ct, NY County 2021]; People v Castellanos, 72 Misc 3d 371, 375 [Sup Ct, Bronx County 2021]; People v Perez, 71 Misc 3d 1214[A], 2021 NY Slip Op 50374[U], *3 [Crim Ct, Bronx County 2021]; People v Kelly, 71 Misc 3d 1202[A], 2021 NY Slip Op 50264[U], *3-*4 [Crim Ct, NY County 2021]).
The matter appeared to be similarly resolved in the Second Department with the Appellate Term's decision in People v Hamizane, 80 Misc 3d 7, 10-11 (App Term, 2d Dept, 9th and 10th Jud Dists 2023). In Hamizane, the court held that the People's obligation with respect to impeachment evidence extends to disclosure of any existing underlying records of police misconduct that tends to impeach the credibility of a testifying witness, and that the People's disclosure obligation is not limited to impeachment evidence that directly arises from the subject matter of the charges against the defendant (80 Misc 3d at 10-11, citing People v Smith, 27 NY3d 652, 667 [2016]; People v Best, 76 Misc 3d 1210[A], 2022 NY Slip Op 508509[U], *3 [Crim Ct, Queens County 2022]; People v Altug, 70 Misc 3d 1218[A], 2021 NY Slip Op 50145[U] [Crim Ct, NY County 2021]).
This court has repeatedly subscribed to this interpretation, but recognizes there are numerous appellate decisions, outside the First Department, that arguably adopt a different view of the statute's requirements. These cases, however, focus on whether the disciplinary materials [*6]"relate to the subject matter of the case," often without articulating whether those materials tend to "impeach the credibility of a testifying prosecution witness." Most of these decisions fail to identify the specific materials sought by the defense, thus not making clear whether those materials would constitute impeachment evidence. To further confuse the issue, many of these cases involve overbroad defense requests that seek material well beyond the statutory requirements for disclosure.
In People v Johnson, for example, the Fourth Department ruled that the "defendant was not automatically entitled to the entirety of a police officer's personnel file as impeaching material under CPL 245.20 (1) (k) (iv), but rather only to the extent that the information related to the subject matter of the case" (218 AD3d 1347, 1350 [4th Dept 2023] [internal citations omitted]). The court found that there were no personnel records that were related to the subject matter of the case. Then, in People v Weisman, 81 Misc 3d 129[A], 2023 NY Slip Op 51248 [U], *2 [App Term, 2d Dept, 9th and 10th Jud Dists 2023], the Hamizane court, citing Johnson, stated that the People's failure to disclose IAB files was not a discovery violation as it was undisputed that the contents of the files were not related to the subject matter of the case. Many courts, however, have observed that this language is non-binding dicta since the defendant's conviction was affirmed on other grounds and the decision did not explicitly overrule Hamizane (see e.g. People v Clark, 83 Misc 3d 1295[A], 2024 NY Slip Op 51296, *2 [Nassau Dist Ct, 1st Dist 2024]; People v Gehlhaus, 82 Misc 3d 864, 866 [Nassau Dist Ct, 1st Dist 2024]; People v Sylvestre, 81 Misc 3d 1051, 1058 [Crim Ct, Kings County 2023]).
Further, it appears that the Fourth Department may have clarified its view of the statute's requirements. In People v Rojas-Aponte (224 AD3d 1264, 1266 [4th Dept 2024]), the Appellate Division held that the People had not established that they fulfilled their discovery obligations with respect to law enforcement disciplinary files (see also People v Sumler, 228 AD3d 1350, 1354 [4th Dept 2024]).
Contrary to the People's claim, Johnson and Weisman do not limit the People's disclosure obligation to records of police witness misconduct that occurred during the investigation of the case for which a defendant is being prosecuted. Significantly, these cases do not address the nature of the misconduct allegations or whether they might bear on an officer's credibility as a witness in the instant case. Similarly, in People v Macaluso, 230 AD3d 1158 (2d Dept 2024), the court simply reaffirmed, without any discussion about the records at issue, that the People were only required to disclose items that relate to the subject matter of the case. The court rejected the defendant's contention that the statute "requires automatic disclosure of the entire disciplinary record for every law enforcement officer involved in the case." Thus, those cases are limited in their analysis and, consequently, their applicability here, as credibility is always related to the subject matter of the case (see People v Edwards, 74 Misc 3d 433, 440 [Crim Ct, NY County 2021] ["[s]ince impeachment evidence is relevant to whether the factfinder in the case should believe the witness, that evidence necessarily relates to the 'subject matter of the case'"]; see also People v Abdullaev, 2024 NY Slip Op 51690[U] at *3 ["impeachment material used to test credibility should always be deemed related to the subject matter of the case"]).
The court also rejects the People's reliance on People v McCarty, 221 AD3d 1360 (3d Dept 2023). In McCarty, the court upheld a trial court's rejection of the defense argument that CPL 245.20 (1) (k) requires the automatic disclosure of "the entire disciplinary record for each and every law enforcement officer involved in [the defendant's] case," a request far broader than the defense is making here. People v Fuentes (81 Misc 3d 136[A], 2023 NY Slip Op 51399[U] [*7][App Term, 2d Dept, 9th and 10th Jud Dists 2023]), which is similarly relied upon by the People, is distinguishable. In that case the court held that IAB reports that exonerated a testifying officer were not related to the subject matter of the case and, therefore, not required as automatic discovery. Likewise, in People v Jawad, 84 Misc 3d 31 (App Term, 2d Dept, 2nd, 11th and 13th Jud Dists 2024), the court upheld a COC, without the disclosure of underlying disciplinary records, where one testifying officer had no substantiated, unsubstantiated or pending allegations of misconduct against him (thus there were no underlying records), and the other officer had one pending allegation, which, the Appellate Term, without discussion and merely quoting the language of the statute, held "was not 'relate[d] to the subject matter of the case'" (84 Misc 3d at 34). In contrast, the records at issue here relate to substantiated and unsubstantiated allegations of misconduct.[FN3]

Adoption of the constricted statutory interpretation urged by the People would disregard the legislature's clearly expressed intent to greatly expand the scope of useful disclosure under CPL article 245. The statute expressly requires a broad interpretation of disclosure requirements: "There shall be a presumption in favor of disclosure when interpreting subdivision one of section 245.20, of this article" (CPL 245.20 [7]) ("[T]he prosecutor's obligations to provide discovery under the current statutes are so broad as to virtually constitute 'open file' discovery, or at least make 'open file' discovery the far better course of action to assure compliance" [William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Criminal Procedure Law § 245.10]).
A narrow interpretation of disclosure requirements as to impeachment evidence does not accord with the statute. First, as a practical matter, any disciplinary proceeding arising from a defendant's arrest will follow its own timetable without regard to the related criminal prosecution. Second, limiting impeachment disclosure requirements to material that arose directly out of the current case would deprive a defendant and defense counsel of utilizing otherwise relevant, and perhaps critical, evidence in assessing the case and preparing for trial. A narrow interpretation would also deprive the factfinder of information directly bearing on the credibility of a law enforcement witness simply because the relevant acts were committed in a different matter.
For example, in a case involving a car stop that a defendant alleges was unlawful, a jury (not to mention a defendant assessing whether to plead guilty) may find it relevant that a testifying police officer on similar facts has previously been sanctioned for unlawfully stopping a citizen. It is no stretch to conclude that evidence regarding a disciplinary proceeding arising from that previous car stop constitutes impeachment material that is relevant to the current case.
For these reasons, this court adheres to its view that the statute requires the People to disclose underlying disciplinary records for substantiated and unsubstantiated allegations of [*8]misconduct against testifying law enforcement witnesses.
Having found that impeachment material of a police witness arising from a previous matter relates to the subject matter of the present case, the court must further consider whether the People have established in their answering papers that they exercised the requisite due diligence prior to filing their initial COC and COR. When a COC is challenged, the People must demonstrate that they operated in good faith, exercised due diligence, and expeditiously provided any missing materials. As set forth in Bay, the People must sufficiently articulate their efforts to comply with the statute.
The People have not provided the court with adequate information to support their claim that they exercised due diligence to obtain the underlying disciplinary records prior to certifying their discovery compliance. They filed their certificate of compliance only six days prior to the expiration of their speedy trial obligation and simply noted that they had made a request for the remaining police material. The People provided no detail, however, about when they initially requested the information, and the boilerplate disclaimer in their ADF offers no insight into the timing of any requests or efforts they made to follow up to secure the material timely. The People's supplemental COC sheds no further light on whether the People exercised due diligence as there is no explanation beyond a reiteration of their pending request with NYPD for disclosure materials. In the papers before the court, it is equally possible that the People waited almost three months before requesting the necessary information from the police.
Although material in the possession of the police is deemed to be in possession of the district attorney, it is the prosecution, not the police, that must exercise due diligence in acquiring discovery material prior to filing a COC. Law enforcement must generate a "flow of information" to the prosecution, but it should be recognized that there will be some lag time until the prosecution obtains actual possession of material that is in the possession of the police. Nonetheless, the People must demonstrate that they requested the material from the police in a timely manner, specifically, that the People requested the material early enough in the proceeding that they will be able to disclose the material to the defense before their speedy trial time expires. If the People do not provide the court with specific information about when they first requested the information from the police and about their follow-up efforts, it will be impossible for the court to determine whether the People exercised due diligence in timely making that material available to the defense.
The new discovery statute dramatically changed the landscape of criminal practice in New York State. It places significant burdens both on law enforcement and the defense bar. Nonetheless, the Court of Appeals has plainly said that it is the People's burden to establish that they exercised due diligence and made reasonable inquiries to acquire and disclose relevant material prior to filing their original COC (People v. Bay, 41 NY3d at 213). This does not place an insurmountable burden on the prosecution; instead, when the validity of a COC is challenged, it provides the prosecution with an opportunity to explain to the court's satisfaction that it made appropriate efforts to comply with the statute. This requires more than boilerplate responses.
The prosecution must detail to the reviewing court the efforts that were made to secure the necessary discovery and disclose it to the defense. Where the necessary discovery includes the disciplinary records of officers they intend to call at trial, it does not require that all the material be disclosed prior to filing a valid COC. But it does require diligent and timely efforts to secure the material, disclosure of any material or information in their possession and prompt disclosure to the defense once the material is received. As the Court of Appeals made clear in [*9]Bay, where the prosecution has provided the information that establishes that they exercised due diligence, a COC is valid, even where further relevant material or information is still outstanding.
In the instant case, the People have long been on notice that they must disclose underlying records for substantiated and unsubstantiated misconduct allegations to satisfy their obligations under CPL 245.20 (1) (k) (iv). Here, there are substantiated and unsubstantiated allegations of serious misconduct against Officer Carpio.[FN4]
Based on the People's failure to provide all underlying records for these allegations, and their failure to adequately explain the efforts undertaken to secure these records prior to filing the COC and COR, the court finds that the People have not demonstrated that they exercised due diligence in complying with their discovery obligations. The initial COC and COR, therefore, are invalid.
CPL 30.30
The defendant here is accused of a misdemeanor offense punishable by a sentence of imprisonment of more than three months. Accordingly, the People must be ready for trial within 90 days of the commencement of the criminal action, absent excludable time (CPL 30.30 [1] [b] and [4]). Once a defendant has alleged an unexcused delay greater than the statutory allowance, the burden shifts to the People to demonstrate that specific periods of delay should be excluded (see People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]).
Criminal Procedure Law § 1.20 (17) provides that "[a] criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court." Here, the accusatory instrument was filed on April 9, 2024. The speedy trial clock started running the next day (People v Stiles, 70 NY2d 765, 767 [1987]).
On July 2, 2024, 84 days after the commencement of the case, the People filed and served their first COC and COR. (84 days charged; 84 days total). As discussed above, however, the initial COC and COR were not valid because of the People's failure to disclose required underlying disciplinary records. The speedy trial clock thus continued to run until at least July 22, 2024, when the People disclosed additional discovery materials and filed and served a supplemental COC and restatement of readiness. Therefore, the 20-day period from July 2 to July 22, 2024, is chargeable to the People. (20 days charged; 104 days total).
Inasmuch as the speedy trial clock already exceeds the permissible 90 days, the court need not address any subsequent periods of delay or the defendant's remaining challenges to the supplemental COC and COR.
CONCLUSION
Because the People are chargeable with at least 104 days of delay, in excess of the 90-day statutory limit, the defendant's motion to dismiss the accusatory instrument under CPL 30.30 (1) (b) must be granted.
Accordingly, it is
ORDERED that the defendant's motion for an order dismissing the accusatory instrument on the ground that he has been denied his right to a speedy trial under Criminal Procedure Law § [*10]30.30 (1) (b) be granted.
DATED: December 19, 2024
New York, NY
Jay L. Weiner
Judge of the Criminal Court

Footnotes

Footnote 1:This discovery also included Giglio search information, a disclosure index, disclosure notice, CCRB history and investigative recommendations for Sergeant James Divino. Sergeant Divino was not identified in the addendum to the People's ADF as a witness they expected to testify, and the defendant has not raised any challenges to the disclosures related to him.

Footnote 2:Although some trial courts have interpreted the statute to require disclosure of underlying records for exonerated and unfounded allegations of misconduct (see e.g., People v Portillo, 73 Misc 3d 216 [Sup Ct, Suffolk County 2021]), this court continues to decline to adopt this expansive reading of the statute.

Footnote 3:The Court notes that People v Earl, 84 Misc 3d 44 (App Term, 2d Dept, 2nd, 11th and 13th Jud Dists 2024), cited by the People, is not binding authority. The Earl court held that underlying disciplinary records for substantiated claims against the arresting officer, for events occurring several years earlier, did not relate to the subject matter of the case and need not be provided. This Court reiterates its view that material that significantly impacts on the credibility of a witness is always related to the subject matter of the case (see People v Edwards, 74 Misc 3d at 440).

Footnote 4:The reason set forth in the supplemental COC for the delayed disclosure of material for Officer Willis supports a finding of due diligence with respect to this document, and is not a basis for invalidating the initial COC and COR.